Case number 3190594 consolidated with 3190596 and 3190601 Dave Carter and Regina Bowman as co-administrators of the estate of Cody Carter, deceased appellants, versus Wesley Township and Jennifer Fender, administrator of the estate of Cheyenne Fender, deceased appellees. Thank you. Good afternoon. Good afternoon. Mr. Osmond. Mr. Osmond, would you like to start? Yes, Your Honor. Laird Osmond on behalf of the appellant. May it please the court. Counsel. Well, I hope plaintiffs appeal and I hope I'm reversed. Such was the exasperation of the trial court having felt compelled to enter summary judgment on behalf of Wesley Township. And it's understandable. These immunity statutes have for decades been misunderstood, been misapplied, and muddled the mind of many a jurist in part due to inconsistent statutory language and lack of some judicial clarity. This trial court expressed its frustration because under the facts of this case, it seems so wrong to grant Wesley Township immunity from responsibility for the deaths of these four children. And it was wrong. And for several different reasons. First, let's discuss what's not involved in this appeal. The trial court held that Wesley Township had a duty to maintain their roadway and breach their duty by doing nothing. Those holdings have not been appealed by appellee and should be considered unchallenged by the court in analyzing whether summary judgment was proper in this case. The precise legal analysis employed by the trial court in reaching his decision is a bit obscure. But we can surmise that since the court ruled that Wesley Township had a duty as a matter of law and breached his duty, the trial court must have concluded that it was compelled to determine that Wesley Township had immunity under Article 2 or Article 3 of the Tort Immunity Act and therefore was afforded an affirmative defense. Now before discussing those issues, the court should focus on a few operative facts. The scene of this occurrence on Ballot Road was for years prone to flooding. And after heavy rains, Forked Creek eventually was able to take a shortcut across Ballot Road bypassing the bridge and then re-entering Forked Creek at the other side. Progressively, this flooding deteriorated Ballot Road causing its subsidence where the berm or the shoulder became higher than the roadway and allowing deeper and deeper accumulations of water because the water was unable to drain from the roadway. Mr. Osmond, a couple of questions because we're having to visualize all of this in the written briefs obviously for some of us anyway. What I understand the testimony of one of the witnesses was that and from what I gather that there's a an elevation going up to the bridge where there was dry pavement on the day in question or a couple days in question but that there was in my view a dip from that approach to the bridge where the water was accumulating. Is that correct or not? I was just about if I could. I wasn't sure how to do this but I have a photograph which is in the record as Road to Wald 5. I don't know if that was coming through to you. That's what I just tried to articulate verbally. Yes, I realized that was going to be a problem. Is this coming through to the three of you? Yes. All right. What that shows there is that area which subsided over years due to the flooding bypassing the bridge and going over to the other side and that is where according to the testimony there was 12 inches deep of water going approximately 60 feet about the size of the red zone on an NFL field and going up to about 30 feet before the bridge. Okay. Now the reason that is now impressed in my mind what I was verbalizing is that what led to this testimony and I can't believe is it argon or agent or one of the two from the Will County people that were one of them was testifying to the effect that would be remedied by a culvert underneath the road to drop that flood water under the road. Is that what their thinking was engineeringly? Yes, my expert had testified that because over the years this was a deterioration of the roadway caused by flooding that they either had to raise the roadway up in order to get that out because had the roadway been like it was supposed to be over a year there would not have been the accumulation it would have been able to drain off and that becomes extremely important in this case because we're not that we've argued that there's a duty to close which I would get to there is an existing duty and the court so noted of a duty to maintain and that regardless of how this court determines the duty to close on the day of the occurrence it doesn't change the 3102 duty to maintain the road and the only reason that there was an issue of closing the road on the day of the occurrence is because of the fact that they didn't maintain it and it caused an excessively and exigently dangerous condition. So you're saying there is could be a factual dispute that proper maintenance could prevent the accumulation short of because there's no duty to make an improvement is there Mr. Osmond. No there is not and of course I deal with that in the argument which is when we consider this is not an improvement okay nor is this an upgrade and I think the court distinguished that very well in uh excuse me one second I off ahead here that the court made the distinction in Mark Twain when it said improvement means a change for the better while maintenance connotes preserving sameness and that's what the distinction is here this road wasn't built this way this road became like this and it became like this over a period of years which was ignored and it became a critical situation that goes to the 3102 duty to maintain correct okay we'll get to that in a minute because there is an immunity that applies in 3105a right well 3105a I think says that it prevents an causing a deterioration from weather we're talking about what I refer to as an act of God so to speak okay the flooding the snow it occurs but let's not go there yet let's let me ask this question somewhere I thought there was a mention of an improvement of some 10 years ago okay yes there was some conversation about the fact there was some work done at the base of the bridge okay and that you know is an issue in the case that they obviously were aware of some needs on this roadway but it doesn't necessarily reflect the point at which all of this occurred which is that deep uh okay I was concluding reasonable I thought that the improvement at the base of the bridge because it was unclear was creating a ramp up elevation to the bridge that would naturally allow a dip to be formed from that improvement which would accumulate water and I think that was an issue yes it was raised by agent the expert that the two in combination created a circumstance that needed to be addressed and was not and because over that 10 years following even that it created a deeper and deeper accumulation and that's central to this whole case because obviously regardless of what immunities are being discussed here they don't apply to a 301 or 3102a requirement of maintenance under the act and your honor mentioned 3105. 3105 specifically excludes from immunity damage to roadways caused by flooding which is exactly this case so even though yes the flooding they'd be immune from doing anything had that just been the issue the reality here is that the roadway was deteriorated by flooding specifically excluded under 3105 and more specifically refer you back to 3102a saying nothing in that section is obviating that duty well that's 301 3105c correct okay that reinstates the duty under 3102 correct now what is there in this record to show deterioration from this flooding agent mr agent who testified that the berm the sides of the road if you will had become higher progressively than the road itself such that it's a catch basin okay the there was flooding that it happened six times a year according to mr rotawald who was a road uh and that produced a condition progressively that became worse and worse over the numerous years decades that this condition had happened i want i have a question i was while under the impression that there were ditches but this is a roadway that has no ditches is that correct or not correct okay so yes in fact it go ahead there's no ditches on the sides no to drain water off so that if water sheets on the highway ditches are designed to collect that sheeting water and remove it from the highway to have it go somewhere through a ditch system right correct now and if you i'm sorry go ahead now if the dip so to speak is a deterioration caused by these floods where is the deterioration you're saying there's a berm up on the side that has not been graded at level of roadway or below the roadway is that correct well there's two two uses of the word grade one because the road subsided the berms became higher and wouldn't allow the water to drain basically have a sinking road exactly and either you your honor identified the point that either you cut down the berms so that the water can get off the road once it is flooded or you raise the roadway up either way the proximate causation of the accumulation of water here is a maintenance matter which is not does not have an immunity under any of the statute that are at issue in this case this isn't a discretionary function there is no discretion to ignore maintenance and we can cut to the chase exactly on that these children died because the wesley township ignored their 3102a duty and as a result a dangerous condition approximately caused their car to go out of control and they deceased um the 2-2-2-0-1 section of the statute which talks about immunity from discretion doesn't apply in this case at all there is absolutely no evidence in this record that any policy decision was ever decided by the municipality wesley township there is some self-serving statements from mr roderwald a road commissioner as to what he saw and what he thought but the case law is very clear and very specific that the supreme court has said you've got to show that there was a conscious deliberate decision on policy that you weighed various conflicting interests and look for solutions okay there is absolutely no evidence in this case that the municipality the four trustees the township supervisor the people that actually are elected to run the township ever even knew about this condition and certainly on the day of the occurrence made a conscious decision to ignore it and do nothing and i think that's important because without that conscious decision there can be no application for immunity uh in fact monson clearly states the failure to prove a conscious decision is fatal to a claim under 2-2-0-1 and monson further says that a public entity claiming immunity for alleged failure to repair a defective condition must present sufficient evidence that it made a conscious decision not to perform the repair there is nothing in this record that wesley township okay the entity made any decisions as it regards this particular defective condition and certainly on the day of the occurrence and therefore they haven't sustained their burden to be granted immunity under 2-2-0-1 and that leaves us strictly under 3-1-0-2 which in this case is is terminative because they failed to maintain it uh the courts are very clear that every failure to maintain property could be described as an exercise of discretion under municipal defendant's expansive approach to governmental immunity the legislature could not have intended such a result otherwise it would not have codified the common law duty to maintain under 3-1-0-2 and that is cited in monson by the gutstein case so our position is very clear here we believe the court failed to properly rule on our motion for summary judgment since there was a duty a breach of that duty proximate cause and damages so we would ask the court to reverse the trial court as it concerns the issue involving summary judgment for wesley township and grant summary judgment in our favor uh i have one question yes you're going off under this other section about a conscious decision being made that must be shown to exist before you you know basically get immunity is that correct yeah under 2-2-0-1 correct under that section yes but don't the facts of this case show that the road commissioner at 5 a.m in the morning went there saw the flooding and did what apparently the historical response of the road commissioner was no barricades no sign no warnings that's correct he is he's not the municipality he is a is it an agent of the municipality well he is an agent of him but the case law you know is very clear that they want before they say discretionary and and ministerial they want it to show that there's governmental action involved here that they don't want to have to second guess there was nothing done by the municipality they didn't weigh what needed to be repaired what it cost these were the assertions of a highway commissioner who was only one of many people and the people that actually control what the municipality does were the supervisor and the trustees there was no testimony from any of them that these people were ever consulted that they ever sat down and said let's balance these interests and come to a solution that is most balanced it's not there was nothing done and that's their burden okay meaning that they failed to uh sustain their burden to be granted 2-2-0-1 discretionary immunity well what about the road elected official he's not not merely an agent i misspoke that yes i assume i don't know exactly yeah how they treat him oh i vote for him in my township okay for the road commissioner uh and it's a coveted position so to speak uh but be that as it may that would go to his immunity as an individual in that capacity as an elected township official yeah well i don't i'm sorry go ahead isn't is he a named defendant as well no no oh okay all right okay that that was it thank you thank you thank you your honor thank you mr lundquist thank you your honor hi good afternoon everyone may it please the court and counsel mr osmond my name is troy lundquist and i represent wesley township and before diverging in a couple things i wanted to touch on justice holdridge you made the very last point about uh the road commissioner whether he is or is not a named defendant i believe he may have been in one of the four cases ultimately it doesn't matter because under section 1-109 where the public official is entitled to immunity then under 2201 so is the township so that that immunity does apply both ways but i would like to back up just for a second before we dive into the other issues and and try to give a little bit more of a picture and i think some of the questions that were asked focused on what is truly important here this was a massive flooding event there uh it's undisputed it was caused by the weather and rain and there were 11 roads in wesley township alone that were flooded completely underwater not just baloo road where we're talking about but baloo road was flooded at a depth of at least a foot for a stretch of over 60 feet or at least 60 feet and contrary to the picture that has been painted here today which frankly was not painted in the trial court so i don't think this is appropriate argument the 99 of the argument in the court below with the failure to close the road and i think what is squarely before the court today is a recognition by the plaintiffs that under the immunities applied under 3104 they have to but there is no evidence whatsoever that the ditches were dry and somehow only the road contained 12 inches of water as seemingly as being suggested here this was a situation where the entire creek was flowing over the ditches over the road over the opposite ditch because baloo road runs east and west forked creek runs north and south so as the creek becomes flooded it widens and essentially overflows everything in its path and that includes the area that we're talking about here which is to the east of the bridge itself but it is correctly stated to be an area where the road and the ground on either side of it goes down and then goes back up again as you approach the bridge so much like the the fourth district considered a case called kennel versus clayton township where that was alleged that rise in the road should have been removed to suggest that the township should have raised the road or somehow done something to warrant it under existing law there's no duty to do that and there's no duty to upgrade this was a situation where the entirety of this area was underwater for a depth of 60 feet so not a depth not a depth of 60 feet length of 60 feet thank you for correcting me for a east west length of at least 60 feet so as far as the signage issues it hasn't been discussed today it was discussed at length in the briefs there was a significant amount of argument on the assertion that the township should have closed the road in fact that was the the main thrust of plaintiff's argument in the court below was the main thrust of their their to close the road that that was in fact his opinion um 3104 has been the law in illinois since the tort immunity act started of note it was amended in 1986 and we removed section b which said that the immunity did not apply if there was evidence of a dangerous condition that needed to be warned of the legislature removed that exception to 3104 and thereafter it's been absolute the west case and all the cases including cases out of out of the third district have consistently enforced 3104a as not requiring signage of any kind the plaintiffs argued that because 3104a did not include the language quote unquote closed roads that somehow it did not apply but i don't believe that is a valid argument certainly the legislature couldn't include every scenario you might do something with a sign it just chose to focus on the signs itself and i think it's very clear under west and judge rossi in the court below because this was the main argument made to him ultimately understood that he had no choice under the precedent but to apply 3104a on all the issues of closing the road so plaintiffs moved then and to have tried to frame this as a a maintenance issue and that that's been the focus of much discussion here today there were three things that the plaintiff's expert said he thought needed to be done and again i i think it's important i don't there's nothing in the record to suggest the picture that has painted by mr osmond here today that the area on either side of the road was dry and that somehow we had 12 inches deep of water in the roadway that was caused to be there by some function of the road lowering over the years that's not what occurred that's not supported by the evidence what is supported by the evidence and i'll take this in a light most favorable to the plaintiff straight from their experts testimony he said that where the road and the topography goes down he said he found that the edges of the ditches were three inches higher than the road on either side okay not a foot not over a foot not some chasm that caused the water to go down onto the road we're three inches are there really ditches mr lundquist in this highway not in your honor not in the sense of what i think you're thinking of in terms of carved out ditches there has never been an improvement to carve out ditches in this area it kind of just flows onto the road so um there is a there's never been an improvement we've never undertaken to do that and cut ditches frankly because this is in a floodplain area we're not allowed to do anything that could potentially alter the water there is case law there's statutory fema and the department of natural resources state very clearly we can't do that but i i do want to make sure that i don't leave your honors with the picture here that somehow this roadway deteriorated over the years to a depth of 12 inches and caused this to be a a creek of its own sort flowing in an east-west that's not what happened this fork creek itself was completely out of its banks and had amassed over the what i'm calling ditches because they're the sides of the roads and the roadway itself at a depth of 12 inches plaintiff's expert said you should raise the road which we know there's no duty to do he said that you should install culverts he didn't explain how installing a area would do anything but taking it as it said there's no duty to make that improvement we know that under common law and 3 105 b and he finally said that because the ditches had been three inches higher on either side or the edges of the road more properly stated you should carve those out and create ditches again there's no duty to do that and there is immunity for any argument that the land adjacent to the roadway should be improved or upgraded in any fashion okay so what you're saying is at the time in question because there was this massive flood plain so to speak that was a 12 inch depth correct correct okay let me change facts on on you just a bit here not saying that these are the facts of your case but if there were because this is a dip i think you will agree with that am i correct not to parse words i won't agree it's a dip there's not some little spot where the entire topography goes down and then it goes back up back up to the bridge okay so when there is a 80 feet how many feet it it declines up to a ramp to go across the bridge so to speak right in general that's correct yes i'm with you all right and if there is a quote burn on the side of each one of the road of the road which is a hard pack road of either what blacktop it's not very concrete okay and that there is the side of that road that is higher than the roadway and you have a rain that's not overcoming that burn would it collect that water if that were the case then not making removing that burn would that be maintenance requirement no i'd respectfully say that even under those circumstances there's still no obligation to change the level and the adjacent it wouldn't be changing oh really you'd have to be digging out a landway adjacent to the roadway under those circumstances it's called a road grader well road grader can't grade the land into the fields on either side road graders typically would grade this isn't like to describe this as a berm is not supported anywhere in the record frankly what the expert said was there's about three inches on either side that he felt the edge of the road was higher than the road itself so understanding your analysis and obviously that's a different scenario than we have here i still don't concede that we have an obligation to change land adjacent to the roadway and in this case that's not what we have here we have it's undisputed frankly plaintiffs experts said and admitted that just doing that would not have changed anything he said you had to do all three things to even have a chance at lessening the water he never testified to a reasonable degree of certainty that even doing all of these would have prevented the overflow of the creek over the road but you have to look at the these three things in conjunction with each other not parse them out individually so that includes installing a culvert includes raising the road up and things that clearly there are no duties to do and then the the next step of this is that there's no dispute whatsoever that unfortunately this this tragedy was caused by the water and we have section 3-110 of the tort immunity act that squarely applies as well section 3-110 points out that when an injury is caused by or in an adjacent waterway lake pool pond or river that when that waterway itself is not supervised owned or maintained by the governmental entity there cannot be liability for it now i know not too long ago this court heard a case out of will county dealing with that it was a unpublished 23 decision so it had been cited to here but one of the focuses there was whether there was truly evidence of who owned the water well here that's undisputed here the water to the north of balloon road was owned and within the jurisdiction of the will county forest preserve and to the south it was under the ownership of milton farms so it was not and it's this is undisputed would not within the maintenance jurisdiction of wesley township so it's also undisputed that unfortunately the injuries in this case were caused by the water so a fair question to ask me and anyone is if the injuries are caused by the water and there's an allegation that you caused the people to be in the water how can you apply the immunity well that was the exact argument that was made to the appellate court in the mccoy case mccoy versus international port district because they alleged that after someone fell into a water waterway they they did so because the area along the side was not maintained properly and that caused the person to fall in and the area of maintenance was within the jurisdiction of the defendant but the court concluded that because 3-110 did not have an exception for that it did not minimize or alleviate the immunity that was applied and i think that the an analysis of that is very similar to what happened with 3-104 and the duty to install signs one might say why can you have an immunity for failure to install signs if that failure to do so creates a dangerous condition well it's because there's no exception to 3104a and it's absolute and that's the announcement of the legislature the same analysis applies to 3-110 there is no exception under 3-110 for an allegation that the defendant and i see my time's up could i have just a second to conclude your honor yes thank you thank you so there's no exception to 3-110 for all the reasons that we've discussed when taking everything into account that the trial court did we asked that the judgment be affirmed the only area where we disagree with judge rossi's decision was on the area of discretionary immunity because the functions of closing roads in 11 places which means 22 different spots and type 3 barricades and keeping people from their homes and digging ditches and affecting the natural flow of waterways and things of that nature are all things that are unique to the public office of road commissioner and these do fall squarely within discretionary functions that was the one area where we believe judge rossi was not correct in his analysis but his ultimate decision was correct and we asked it to be affirmed thank you mr lundquist i have a question for mr lundquist yes your honor okay maybe i misunderstood you but when we focus on maintenance you're saying there's there's no duty or obligation for the governmental entity to maintain anything but the surface of the road is that what you're trying to tell me no i didn't mean reading i didn't mean to make it that narrow i think that frankly this district third district has held that under havens versus harris there's no obligation to do grading or digging of ditches or widening of roads and things of that nature but i can certainly imagine a a scenario possibly where the edge of the road being part of the road may need to be maintained however that's not the case here under these facts okay yeah under the fact because uh property adjoining in a roadway is mentioned a lot in immunities sections right and that's what the concept of right of way is not just the road surface so true i hope that clarifies kind of what i was saying because read in conjunction with i mean this has been argued numerous times in third districts we have a lot of roadways and havens versus harris is one of the seminal cases out of our district that deals with these issues and it held squarely that it's discretionary whether you widen roads smooth gravel do grading uh mow ditches all of those types of things which are on a jenny land some of them so i hope that clarifies i'm not saying there can't be a scenario ever imagined but it's certainly not in this case okay very good thank you thank you thank you thank you um mr asman any rebuttal yes your honor i think we go back to this picture okay because council is this clear enough that we can disappearing sometimes on my screen this was rotowald five it's very clear that everything in that depression the berm the shoulder everything is significantly lower than it is on both sides and that's why the water was 12 inches deep and that was because the roadway wasn't maintained and it was conspicuous that appley's argument didn't discuss all of that that there is a duty to maintain your roadway the common law under 3102a is not to be abrogated by some interpretation of 3104 because we wouldn't have been here in this situation had they addressed this now not only on the day of this occurrence but years before and there's no doubt about that mr yes is the thing that you're no has it did somebody measure it no no you can see in the photograph five rotowald five that that berm or shoulder whatever you wish to call it is depressed at the area where this accumulation causes vehicles go out of control and therefore it can see that it drops off it actually disappears you said nobody measured it no that it was reviewed by agent and that's important because there wasn't any testimony from wesley township that uh what we said wasn't true and the point is it's this is a maintenance case and there is an issue certainly that creates quite a you know a conundrum because frankly you know it would be a bit in an ironic that a public entity would be liable to the public for injuries or death caused by failures to maintain their property but would not be required to warn the public of such conditions even when those conditions presented an exigent dangerous serious risk of injury or death that they themselves had contributed to cause it would seem that that would be construing the immunity statute in an absurd or unjust manner which the supreme court in solon said we're not supposed to do that would sort of allow the public entity to throw caution to the public from their failures to maintain their property this roadway argument about water from some unre you know unregulated or an area where they didn't control it's not about this case this is on their road and it's caused because their road subsided and they did nothing about it and their argument to this court is we don't have to well yes you do and this is not an improvement under the case law and this is not an upgrade under the case law it clearly is only asking that they maintain sameness which they did not do in a condition that progressively got worse and worse ultimately was responsible for the deaths of four youths who made contact with their excessive accumulation caused by their failure to maintain we certainly believe that there has to be some kind of parity between warning what you know when you've done it when you've caused it and there is a schism in the case law to that regard however as far as we are here on a summary judgment granted saying there's no issue of fact that they are entitled to summary judgment well there's certainly no immunity that applies to the maintenance here and furthermore they certainly under the facts of this case have not established that they are entitled to any and that they had a duty to maintain and so we certainly maintain that summary judgment was totally improper at the very least there are issues of fact inherent in this fact pattern and summary judgment was totally improper we asked the court to reverse and remand the case and consider our motion for judgment since the elements were proven to the point that there isn't an issue of fact that they failed to maintain the road that the roadway that they fail to maintain was the proximate cause of the death of these children and therefore we proved our case and we'd ask the court to rule accordingly thank you thank you we thank both of you for your arguments this afternoon we'll take the matter under advisement and we'll issue a written decision as quickly as possible the court will now stand in recess until tomorrow morning